IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TRUSTEES OF THE UNITED ASSOCIATION NATIONAL PENSION FUND, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 1:23-cv-1653 (RDA/LRV)<br>) |
| MACCARONE PLUMBING, INC., | )<br>) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiffs' Motion for Default Judgment, (Dkt. No. 10) (the "Motion"), the memorandum in support, (Dkt. No. 11), and the related exhibits, (Dkt. No. 11-1). The Court held a hearing on the Motion, at which counsel for Plaintiffs presented argument. No one appeared on behalf of Defendant. For the reasons that follow, the undersigned recommends that the Court **GRANT** the Motion. The undersigned files this Report and Recommendation under 28 U.S.C. § 636(b)(1)(C). A copy of the Report and Recommendation will be provided to all interested parties.

**I. Factual Background**

On December 5, 2023, Plaintiffs filed this action seeking delinquent contributions, accrued interest, liquidated damages, injunctive relief, and attorneys' fees and costs, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and

1

the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185(a). (Dkt. No. 1 ¶ 2.) The following facts are established in the Complaint, (Dkt. No. 1).[1]

Plaintiff Trustees of the United Association National Pension Fund (the "Pension Fund"), are the trustees of a multiemployer employee benefit plan administered in Alexandria, Virginia. (*Id.* ¶ 1.) The Pension Fund is established and maintained by a Restated Agreement and Declaration of Trust. (*Id.*) Plaintiff Trustees of the International Training Fund (the "Training Fund") are the trustees of a multiemployer employee benefit plan. (*Id.* ¶ 2.) The Training Fund's agent for collecting and processing contributions is the Pension Fund. (*Id.*) As trustees, Plaintiffs are bound by the fiduciary duties set forth in ERISA and the LMRA. Under ERISA and the LMRA, Plaintiffs are also empowered to bring civil actions against employers. *See* 29 U.S.C. §§ 1132(a)(3), 1132(g)(2); 29 U.S.C. § 185(a).

Defendant Maccarone Plumbing, Inc. ("Maccarone" or "Defendant") is a New York corporation that operates as a contractor in the plumbing and pipefitting industry. (*Id.* ¶ 3.) The Pension Fund and the Training Fund (collectively, the "Funds") are maintained, in part, by a Collective Bargaining Agreement between United Association Local Union No. 200 and, among others, the Defendant (the "Local 200 CBA"). (*Id.* ¶¶ 1–2.) At all times relevant to this action, Defendant was bound by the Local 200 CBA, effective for the period of May 1, 2022 through April 30, 2026. (*Id.* ¶ 7; Dkt. No. 11-1 at ECF p. 2 (T. C. Inscoe Decl. for NPF).) The Local 200 CBA is affixed to T. C. Inscoe's Declaration on Behalf of the Pension Fund as "Exhibit A," (*see* Dkt. No. 11-1 at ECF ps. 5–19), along with Defendant's signature page as "Exhibit B," (*see* Dkt. No. 11-1 at ECF ps. 20–21).

---

[1] *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim.").

Pursuant to the Local 200 CBA, Defendant agreed to pay to the Funds certain sums of money for each hour worked by covered employees, (Dkt. No. 1 ¶¶ 8–9), and to submit monthly remittance reports to the Funds for all hours worked on behalf of Defendant's covered employees.[2] (Dkt. No. 1 ¶¶ 15, 24.) Additionally, pursuant to Article 19 of the Local 200 CBA and the National Pension Fund's Standard Form of Participation Agreement incorporated therein, Defendant agreed to be bound by the Restated Agreement and Declaration of Trust establishing the National Pension Fund (the "NPF Trust Agreement") and the Restated Trust Agreement establishing the Training Fund ("ITF Trust Agreement").[3] (*Id.* ¶¶ 16, 25; *see also* T. C. Inscoe Decl. for NPF ¶ 3.) The NPF Trust Agreement and ITF Trust Agreement set forth the remedies available to the Funds if Defendant failed to abide by the terms and conditions in the Local 200 CBA. (Dkt. No. 1 ¶¶ 17, 26.)

For the months of January 2023 through October 2023, Defendant failed to make contributions due to the Funds for work covered by the Local 200 CBA. (Dkt. No. 1 ¶¶ 12, 21.) Based on the remittance reports that Defendant submitted to the Funds, Plaintiffs calculated that, for the months of January 2023 through June 2023, Defendant owed the Pension Fund contributions in the amount of $118,513.82 and owed the Training Fund contributions in the amount of $10,808.05. (*Id.* ¶¶ 13, 22.) For the period of July 2023 to October 2023, Plaintiffs were initially unable to calculate the amount of unpaid contributions because Defendant failed to submit remittance reports for that period. (*Id.*) However, after Plaintiffs filed this action on December 5, 2023, Defendant began remitting the overdue contributions. (*See* T. C. Inscoe Decl.

---

[2] The Funds use remittance reports to determine the entire amount of the monthly contributions due to the Funds.
[3] The NPF Trust Agreement, (*see* Dkt. No. 11-1 at ECF ps. 22–80), the ITF Trust Agreement, (*see id.* at ECF ps. 116–55), and the Pension Fund's Standard Form of Participation Agreement, (*see id.* at ECF ps. 81–85), are filed as exhibits on the record.

3

for NPF ¶ 6.) Affixed as "Exhibit E" to T. C. Inscoe's Declaration is a summary of Defendant's payments to the Funds between December 14, 2023 and June 20, 2024 (covering work periods of January 2023 through October 2023), totaling $241,613.29. (*See* Dkt. No. 11-1 at ECF ps. 86–87). At the hearing on Plaintiffs' Motion for Default Judgment, counsel for Plaintiffs confirmed that Defendant had remitted all unpaid contributions for January 2023 to October 2023, and Defendant had submitted the missing remittance reports for July 2023 to October 2023. Therefore, Plaintiffs are no longer seeking injunctive relief or unpaid contributions, only liquidated damages, interest, and attorney's fees and costs.

## II. Legal Standard

Federal Rule of Civil Procedure 55 provides that default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Although a defaulting defendant is deemed to have admitted the well-pleaded allegations of fact set forth in the complaint, *see* Fed. R. Civ. P. 8(b)(6), conclusions of law or "allegations regarding liability that are not 'well-pleaded'" are not deemed admitted. *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014). Before entering default judgment, therefore, the Court must determine whether the facts, as alleged in Plaintiffs' Complaint, state a claim for relief. *JTH Tax, Inc.*, 8 F. Supp. at 736 (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).

## III. Proposed Findings and Recommendations

As a preliminary matter, the Court must find that it has subject-matter jurisdiction, personal jurisdiction, and that venue is proper.

A. **Jurisdiction and Venue**

First, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under federal law, specifically Section 301 of the LMRA, 29 U.S.C. § 185, and Section 502 of ERISA, 29 U.S.C. §§ 1132. (*See* Dkt. No. 1 ¶ 4; Dkt. No. 10 ¶ 3.)

Second, the Court has personal jurisdiction over Defendant pursuant to ERISA's nationwide service of process provision, 29 U.S.C. § 1132(e)(2), which permits an ERISA action to be brought in federal court in the district "where the plan is administered." *See Trs. Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 443–44 (4th Cir. 2015) ("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment."). Here, the Pension Fund and Training Fund are administered in this District. (*See* Dkt. No. 1 ¶¶ 1–2, 6.) Because it does not appear that litigating in this Court would cause an inconvenience to Defendant that would "rise to a level of constitutional concern," the Court has personal jurisdiction over Defendant. *See Pipefitters Nat'l Pension Fund*, 791 F.3d at 444 (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626–27 (4th Cir. 1997)).

Finally, venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2), because the Pension Fund and Training Fund are administered in this district. (*See* Dkt. No. 1 ¶ 6.)

B. **Service of Process**

Before entering default judgment, the Court must find that Defendant has been properly served. Under ERISA, service of process is proper in any district where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Pursuant to Federal Rule of Civil Procedure 4(h), service upon a corporate entity in the United States must be made "in the manner prescribed by Rule 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint

to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). Here, the Complaint and Summons were personally served on Dawn Acqua, the authorized representative of registered agent John Joseph Maccarone, at 10 Sea Cliff Avenue, Glen Cove, New York, 11542. (Dkt. No. 6; *see also* Dkt. No. 7-1 ¶ 2.) Accordingly, service of process was properly effectuated.

### C. Grounds for Entry of Default

Because service was proper, Defendant was required to respond to the Complaint by January 8, 2024—twenty-one (21) days after service was completed on December 18, 2023. (*See* Dkt. No. 6; *see also* Fed. R. Civ. P. 12(a)(1).) To date, no responsive pleading has been filed, and the time for doing so has since expired. On February 16, 2024, Plaintiffs filed a Request for Entry of Default and mailed a copy of that filing to Defendant.[4] (Dkt. No. 7.) The Clerk properly entered default against Defendant on February 20, 2024. (Dkt. No. 8.) On May 14, 2025, the Court ordered Plaintiffs to "file a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b) and an accompanying memorandum." (Dkt. No. 9.)

On May 29, 2025, Plaintiffs filed the instant motion for default judgment, accompanying memorandum, and supporting documentation. (Dkt. Nos. 10, 11, 11-1.) Once more, Plaintiffs sent a copy of these materials to Defendant using the same address that was used to serve the Complaint and Summons. (Dkt. No. 10-2.) The undersigned held a hearing on the Motion, at which Plaintiffs' counsel appeared, and no one was present on behalf of Defendant. (*See* Dkt. No. 14 (Minute Entry for June 13, 2025 Hearing).) The Court then took the matter under advisement to issue this Report and Recommendation. (*Id.*)

---

[4] Specifically, the copy was mailed to John Joseph Maccarone, Maccarone Plumbing, Inc., 10 Sea Cliff Avenue Glen Cove, NY 11542. (Dkt. No. 7 at 3.)

**D.  Liability**

Because a default has been entered, Defendant is deemed to have admitted the well-pleaded factual allegations in Plaintiffs' Complaint. *See* Fed. R. Civ. P. 8(b)(6); *JTH Tax, Inc.*, 8 F. Supp. 3d at 736. Plaintiffs bring three claims: Delinquent Contributions to the Pension Fund (Count I); Delinquent Contributions to the Training Fund (Count II); Enjoin Violations of the Terms of Employee Benefit Plans (Count III). (Dkt. No. 1.) Based on the allegations in Plaintiffs' Complaint, and as supported by Plaintiffs' Motion for Default Judgment (Dkt. No. 10), and the accompanying memorandum, declarations, and exhibits thereto (Dkt. Nos. 11, 11-1), the undersigned recommends finding Defendant liable to Plaintiffs for delinquent contributions, as further explained below.

Under ERISA, where an employer is obligated to contribute to a multiemployer plan pursuant to the plan's governing documents or a collective bargaining agreement, a fiduciary may initiate a civil action in federal court to recover any delinquent contributions from that employer. *See* 29 U.S.C. §§ 1132(a)(3) and 1145; *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 139 (4th Cir. 2019). Additionally, Section 301(a) of the LMRA provides federal jurisdiction to redress a breach of collective bargaining agreements:

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Plaintiffs rely on Section 301 as a separate, but overlapping, basis for relief. *See Burgher v. Feightner*, 722 F.2d 1356, 1359 (7th Cir. 1983) (explaining that the enforcement provisions of ERISA were "intended to supplement rather than supersede the right existing under 29 U.S.C. § 185(a)").

7

The question then is whether Defendant is "[1] an employer [2] obligated to contribute to a multiemployer plan [3] pursuant to the plan's governing documents or a collective bargaining agreement." *See* 29 U.S.C. §§ 1132(a)(3) and 1145. First, under ERISA's broad definition of "employer," Defendant is an employer. *See* 29 U.S.C. §§ 152(2), 1002(5). Second, the Funds are employee benefit plans within the meaning of ERISA. *See* 29 U.S.C. § 1002 (3). Third, as described more fully in the background section of this Report and Recommendation, Defendant was subject to the terms and obligations set forth in the Local 200 CBA and the NPF Trust Agreement. Accordingly, Defendant is subject to ERISA and Plaintiffs may bring this action to recover any delinquent contributions, interest, liquid damages, and attorney's fees from Defendant. *See* 29 U.S.C. §§ 1132(a)(3) and 1145. Indeed, Defendant has remitted the overdue contributions from January 2023 to October 2023. (*See* Dkt. No. 11-1 at ECF ps. 86–87).

In conclusion, the undersigned recommends finding that Defendant is in default and liable to Plaintiffs for their delinquent contributions under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185. Therefore, Plaintiff may also recover the interest and liquidated damages associated with those contributions, and their attorney's fees and costs.

### E. Requested Relief

Unlike liability, allegations concerning damages are not admitted upon default. *See* Fed. R. Civ. P. 8(b)(6). Instead, the Court "must make an independent determination regarding damages." *Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation and quotation marks omitted). Plaintiffs initially sought to enjoin Defendant's continued nonpayment and to recover delinquent contributions for the period of January 2023 to October 2023. However, as of the hearing on the Motion for Default Judgment, Defendant paid its delinquent contributions and submitted the missing remittance reports for July 2023 to October

2023. (*See* Dkt. No. 11-1 at ECF ps. 86–87). Therefore, Plaintiffs have narrowed their requested relief to recover interest (accrued through date of payment of the delinquent contributions), liquidated damages, and attorneys' fees and costs. (Dkt. No. 10-1 at 2.)

In any action brought to enforce the payment of delinquent contributions in which a judgment in favor of the plan is awarded, the Court shall award the plan:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>   (i) interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A) ....
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### 1. Accrued Interest and Liquidated Damages

Under 29 U.S.C. § 1132(g)(2)(B), a fiduciary who brings an action for unpaid contributions will be awarded interest on those contributions for the benefits of the plan. 29 U.S.C. § 1132(g)(2)(B) ("[T]he court shall award the plan . . . interest on the unpaid contributions.") Additionally, 29 U.S.C. § 1132(g)(2)(C) entitles the prevailing fiduciary to "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount [of unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C). The interest rate and method for calculating liquidated damages is typically found in the applicable collective bargaining agreements and Trust documents.

For the Pension Fund, Article VI, Section 5 of the NPF Trust Agreement provides that an employer who fails to timely pay the amounts required by the Local 200 CBA shall be obligated to pay liquidated damages and interest as follows:

9

"[l]iquidated damages in the amount of <u>10% of the contributions owed</u> may be assessed as part of the delinquency. Interest will be assessed on the delinquent contributions at a rate of up to <u>12% per annum</u> from the date the payment was due until the date of payment."

(Dkt. No. 11-1 at ECF p. 93 ("Exhibit F" to T. C. Inscoe Decl. for NPF)) (emphasis added). Below are Plaintiffs' calculations, as summarized in Exhibit G to T. C. Inscoe's Declaration on Behalf of the Pension Fund:

**NATIONAL PENSION FUND**
**Interest Assessed at the Rate of 12% Per Annum**
**Liquidated Damages (10%)**
**CONTRIBUTIONS, LIQUIDATED DAMAGES AND INTEREST:**

**Local 200**

| DATE | REPORTS/ NO MONEY | REPORTS/ SHORTAGE | NO REPORTS/ NO MONEY | TOTAL CONTRIB. PAID | TOTAL CONTRIB. OWED | LIQUIDATED DAMAGES | DAILY INTEREST RATE | DAILY INTEREST | DUE DATE | DATE PAID/ CURRENT DATE | DAYS LATE | TOTAL INTEREST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan-23 | $28,938.18 | $0.00 | | $28,938.18 | $0.00 | $2,893.82 | 0.033% | $9.55 | 20-Feb-23 | 14-Dec-23 | 297 | $2,836.23 |
| Feb-23 | $24,963.87 | $0.00 | | $24,963.87 | $0.00 | $2,496.39 | 0.033% | $8.24 | 20-Mar-23 | 18-Dec-23 | 273 | $2,249.00 |
| Mar-23 | $29,108.23 | $0.00 | | $29,108.23 | $0.00 | $2,910.82 | 0.033% | $9.61 | 20-Apr-23 | 26-Jan-24 | 281 | $2,699.21 |
| Apr-23 | $20,220.30 | $0.00 | | $20,220.30 | $0.00 | $2,022.03 | 0.033% | $6.67 | 20-May-23 | 20-Feb-24 | 276 | $1,841.66 |
| May-23 | $20,585.93 | $0.00 | | $20,585.93 | $0.00 | $2,058.59 | 0.033% | $6.79 | 20-Jun-23 | 18-Mar-24 | 272 | $1,847.79 |
| Jun-23 | $19,710.41 | $0.00 | | $19,710.41 | $0.00 | $1,971.04 | 0.033% | $6.50 | 20-Jul-23 | 01-Apr-24 | 256 | $1,665.14 |
| Jul-23 | $18,247.81 | $0.00 | | $18,247.81 | $0.00 | $1,824.78 | 0.033% | $6.02 | 20-Aug-23 | 02-May-24 | 256 | $1,541.57 |
| Aug-23 | $21,287.94 | $0.00 | | $21,287.94 | $0.00 | $2,128.79 | 0.033% | $7.03 | 20-Sep-23 | 14-May-24 | 237 | $1,664.93 |
| Sep-23 | $17,913.52 | $0.00 | | $17,913.52 | $0.00 | $1,791.35 | 0.033% | $5.91 | 20-Oct-23 | 20-May-24 | 213 | $1,259.14 |
| Oct-23 | $20,043.30 | $0.00 | | $20,043.30 | $0.00 | $2,004.33 | 0.033% | $6.61 | 20-Nov-23 | 20-Jun-24 | 213 | $1,408.84 |
| **TOTALS** | **$221,019.49** | **$0.00** | | | **$0.00** | **$22,101.95** | | | | | | **$19,013.52** |

Contributions: $0.00
Liquidated damages: $22,101.95
Interest: $19,013.52

Grand Total: $41,115.46

(*See* Dkt. No. 11-1 at ECF p. 96.) In sum, Plaintiffs request that Defendant pay the Pension Fund $22,101.95 in liquidated damages for late paid contributions for the months of January 2023 through October 2023 equal to 10% of contributions due each month for which contributions were not paid timely; and interest in the amount of $19,013.52 assessed at the rate of 12% per annum[5] of the amount due from the date each contribution came due, but not paid, through the date of payment. (Dkt. No. 10-1 at 1–2.)

---

[5] Because the interest rate is 12% per annum, 12% divided by 365 days equals 0.03287%, which is approximately 0.033% as reflected in Plaintiffs' calculations.

With respect to the liquidated damages and interest due to the Training Fund, Article VI, Section 6 of the ITF Trust Agreement provides that an employer who fails to pay the amounts required by the Collective Bargaining Agreement on time shall be obligated to pay liquidated damages and interest as follows: "liquidated damages for each monthly report or payment due in the amount of twenty percent (20%) of the amount due, plus interest from the date due to the date of payment at a rate of twelve percent (12%) per annum." (Dkt. No. 1 ¶ 26) (emphasis added). Below are Plaintiffs' calculations, as summarized in Exhibit E to T. C. Inscoe's Declaration on Behalf of the Training Fund:

**INTERNATIONAL TRAINING FUND**
Interest Assessed at the Rate of 12% Per Annum
Liquidated Damages (20%)
CONTRIBUTIONS, LIQUIDATED DAMAGES AND INTEREST:

Local 200

| DATE | REPORTS/ NO MONEY | REPORTS/ SHORTAGE | NO REPORTS/ NO MONEY | TOTAL CONTRIB. PAID | TOTAL CONTRIB. OWED | LIQUIDATED DAMAGES | DAILY INTEREST RATE | DAILY INTEREST | DUE DATE | DATE PAID/ CURRENT DATE | DAYS LATE | TOTAL INTEREST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan-23 | $2,365.20 | $0.00 | | $2,365.20 | $0.00 | $473.04 | 0.033% | $0.78 | 20-Feb-23 | 14-Dec-23 | 297 | $231.81 |
| Feb-23 | $2,141.65 | $0.00 | | $2,141.65 | $0.00 | $428.33 | 0.033% | $0.71 | 20-Mar-23 | 18-Dec-23 | 273 | $192.94 |
| Mar-23 | $2,471.75 | $0.00 | | $2,471.25 | $0.00 | $494.35 | 0.033% | $0.82 | 20-Apr-23 | 26-Jan-24 | 281 | $229.16 |
| Apr-23 | $1,945.10 | $0.00 | | $1,945.10 | $0.00 | $389.02 | 0.033% | $0.64 | 20-May-23 | 20-Feb-24 | 276 | $177.16 |
| May-23 | $2,063.10 | $0.00 | | $2,063.10 | $0.00 | $412.62 | 0.033% | $0.68 | 20-Jun-23 | 18-Mar-24 | 272 | $185.18 |
| Jun-23 | $2,050.00 | $0.00 | | $2,050.00 | $0.00 | $410.00 | 0.033% | $0.68 | 20-Jul-23 | 01-Apr-24 | 256 | $173.18 |
| Jul-23 | $1,841.20 | $0.00 | | $1,841.20 | $0.00 | $368.24 | 0.033% | $0.61 | 20-Aug-23 | 02-May-24 | 256 | $155.54 |
| Aug-23 | $2,050.80 | $0.00 | | $2,050.80 | $0.00 | $410.16 | 0.033% | $0.68 | 20-Sep-23 | 14-May-24 | 237 | $160.39 |
| Sep-23 | $1,797.40 | $0.00 | | $1,797.40 | $0.00 | $359.48 | 0.033% | $0.59 | 20-Oct-23 | 20-May-24 | 213 | $126.34 |
| Oct-23 | $1,867.60 | $0.00 | | $1,867.60 | $0.00 | $373.52 | 0.033% | $0.62 | 20-Nov-23 | 20-Jun-24 | 213 | $131.27 |
| TOTALS | $20,593.80 | $0.00 | | | $0.00 | $4,118.76 | | | | | | $1,762.99 |

Contributions: $0.00
Liquidated damages: $4,118.76
Interest: $1,762.99

Grand Total: $5,881.75

(*See* Dkt. No. 11-1 at ECF p. 159.) At bottom, Plaintiffs request that Defendant pay the Training Fund $4,118.76 in liquidated damages assessed on late payments for the months of January 2023 through October 2023 equal to 20% of contributions due each month for which contributions were not paid timely; and interest in the amount of $1,762.99 assessed at the rate of 12% per annum from the date each contribution came due, but was not paid, through the date of payment. (Dkt. No. 10-1 at 2.)

11

Upon an independent review of Plaintiffs' calculations, the undersigned finds that the amounts requested are supported by the record. Accordingly, the undersigned recommends that Plaintiffs be awarded accrued interest and liquidated damages in the amount of $46,997.22.

        2.    *Attorney's Fees and Costs*

Plaintiffs also seek reasonable attorney's fees and costs. (Dkt. No. 10-1 at 2.) The Federal Rules of Civil Procedure allow the prevailing party to receive a cost award unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1). Under ERISA, in any action "by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—(D) reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). In calculating attorney's fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit provides twelve factors in determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

In support of its request for attorney's fees and costs, Plaintiffs submitted the Declaration of Jacob N. Szewczyk, Plaintiffs' counsel, which describes the attorney's fees and costs incurred in this action. (Dkt. No. 11-1 at ECF ps. 160–63 ("J. N. Szewczyk Decl.").) Applying a lodestar

analysis, the undersigned finds that Plaintiffs' request is reasonable and should be granted. *See Airlines Reporting Corp. v. Cartagena Travel and Tours, Inc.*, 2012 WL 13019066, at *11 (E.D. Va. Aug. 3, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the ... reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate ... [w]hen the documentation of hours is inadequate, the district court may reduce the award accordingly.").

Mr. Szewczyk along with David Capuano, Alexa Zogopoulos, and Shannon Gough (associates at Mr. Szewczyk's firm) performed a total of 20.25 hours of work at rates of $315.00 and $324.00, totaling $6,482.25.[6] (J. N. Szewczyk Decl. ¶ 6.) In support of the reasonableness of these hourly rates, Mr. Szewczyk offers his credentials, the credential of the other attorneys named herein, and submits that based on his review of attorney's fees petitions before this Court, the hourly rates are reasonable. (*Id.* ¶¶ 2–7.) Further, Mr. Szewczyk notes that his firm and Plaintiffs negotiated a "hourly fee is at or below the usual and customary fee charged for this type of work." (*Id.* ¶ 9.)

On that record, the undersigned finds these hourly rates to be reasonable when considering the totality of circumstances, including the nature of the case, counsel's experience, and rates established for similarly positioned counsel and matters in this district. As for the number of hours dedicated to this matter, Plaintiffs' counsel clarified during the default judgment hearing that they are not seeking to recover fees for any efforts expended after filing the Motion for Default Judgment (e.g., presenting argument at the default judgment hearing). The undersigned further finds that no adjustment to the hourly rates should be applied. Accordingly, the undersigned

---

[6] Mr. Szewczyk's declaration attaches as Exhibit A "a chart detailing the attorney time expended by the firm in the above-captioned case on behalf of Plaintiffs," along with an invoice from the process server. (Dkt. No. 11-1 at ECF. ps. 164–68.)

recommends finding that the lodestar fees amount of $6,482.25 is reasonable, need not be further adjusted, and should be awarded to Plaintiffs.

As for costs, Plaintiffs seek recovery of $700.00, resulting from the filing of the Complaint ($405.00) and process server fees ($295.00). (*Id.* ¶ 8.) The undersigned finds that these costs are reasonable and necessary to this action and should be awarded to Plaintiff.

## IV. Recommendation

For the reasons stated above, the undersigned recommends that the Court:

- **GRANT** Plaintiffs' Motion for Default Judgment (Dkt. No. 10).

- **ENTER** judgment in favor of Plaintiffs and against Defendant Maccarone Plumbing, Inc. as to Counts I and II, in the total sum of $54,179.47, as follows:

    o For Plaintiff Trustees of the United Association National Pension Fund, $22,101.95 in liquidated damages for late paid contributions for the months of January 2023 through October 2023 equal to 10% of contributions due each month for which contributions were not paid timely; and interest in the amount of $19,013.52 assessed at the rate of 12% per annum of the amount due from the date each contribution came due, but not paid, through the date of payment;

    o For Plaintiff Trustees of the International Training Fund, $4,118.76 in liquidated damages assessed on late payments for the months of January 2023 through October 2023 equal to 20% of contributions due each month for which contributions were not paid timely; and interest in the amount of $1,762.99 assessed at the rate of 12% per annum from the date each contribution came due, but was not paid, through the date of payment; and

    o Costs of $700.00 and reasonable attorneys' fees of $6,482.25 payable to Plaintiff Trustees of the United Association National Pension Fund.

## V. Notice

The parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days

of its service. Failure to timely object waives appellate review of the substance of this Report and Recommendation and any judgment or decision based on it.

    **ENTERED** this 12th day of February, 2026.

Alexandria, Virginia

                                                  /s/ *LRV*
                                     Lindsey Robinson Vaala
                                     United States Magistrate Judge